**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **HUAWEI TECHNOLOGIES CO. LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**T-MOBILE US, INC.** and **T-MOBILE USA, INC.,**<br><br>Defendants,<br><br>**NOKIA SOLUTIONS AND NETWORKS US LLC, NOKIA SOLUTIONS AND NETWORKS OY, TELEFONAKTIEBOLAGET LM ERICSSON, and ERICSSON INC.**<br><br>Intervenors. | Civil Action Nos. 2:16-cv-00052-JRG-RSP<br>2:16-cv-00055-JRG-RSP<br>2:16-cv-00056-JRG-RSP<br>2:16-cv-00057-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF HUAWEI TECHNOLOGIES CO. LTD'S SUR-REPLY TO DEFENDANTS
MOTION UNDER DAUBERT TO EXCLUDE THE
<u>DAMAGES TESTIMONY OF DR. THOMAS D. VANDER VEEN</u>**

In its reply, T-Mobile selectively (and misleadingly) quotes from Dr. Vander Veen's deposition to suggest that he agreed with the questioner that he was attempting to value the entire LTE standard. In fact, his testimony is clear that he was *disagreeing* with the questioner and was valuing the *technology* in LTE, which he then further apportioned to the patents-in-suit:

> Q. But you don't dispute that your royalties are derived from the value of the entire LTE standard, correct?
>
> A. No. My -- the starting point is what is the incremental value of the LTE technology and then apportioned to the patents-in-suit in this case.

[Dkt. 260, Ex. E at 64:16-22; compare Reply at 1.]

1

T-Mobile's reply brief does not dispute that price regression analysis is an established and acceptable methodology for apportioning to identify the portion of a selling price attributable to a specific aspect of a product or service. Price regression is the tool Dr. Vander Veen used to determine the value of the technologies in 4G to T-Mobile absent the value of standardization, which he then further apportioned to the asserted patents. [*See Id.* at 71:17-19 ("the test is what is the value of the technology absent the value of the standard. And the regression analysis does that.").] While T-Mobile dances around the issue, its position is that a party can never conduct an apportionment in a case involving a standards essential patent because, according to T-Mobile, it is not appropriate to analyze the revenue that an accused infringer received from practicing the standard. That is not the law. To the contrary, the very cases T-Mobile relies upon stress that apportionment is required in cases involving standards-essential patents. *See Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys.*, 809 F.3d 1295, 1304 (Fed. Cir. 2015) ("a royalty award for a SEP **must be apportioned** to the value of the patented invention…") (emphasis added); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1232-33 (Fed. Cir. 2014) ("Just as we apportion damages for a patent that covers a small part of a device, we **must also apportion** damages for SEPs that cover only a small part of a standard.") (emphasis added). It would be impossible to conduct such an apportionment if an expert could not analyze the revenue received from practicing the claimed inventions.

With respect to "non-discrimination," T-Mobile confuses *Georgia Pacific* factors 1 and 5. In *Ericsson* the Federal Circuit held that *Georgia Pacific* factor 5 (the "commercial relationship between the licensor and the licensee") is irrelevant in cases involving SEPs because a patentee is not permitted to charge higher rates to competitors. 773 F.3d at 1230-31. The Federal Circuit did not hold that because of this, all licenses (even non-comparable licenses) are

relevant under *Georgia Pacific* factor 1 ("the royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty"). To the contrary, the Federal Circuit has held that the license analysis under *Georgia Pacific* factor 1 must account "for differences in the technologies and economic circumstances of the contracting parties." *CSIRO*, 809 F.3d at 1303. That is the analysis Dr. Vander Veen performed when he determined that the Huawei/Ericsson license does not set an "established royalty" for the patents-in-suit. If T-Mobile disagrees, it can cross-examine Dr. Vander Veen on this point, and it can have its own experts discuss that license. This disagreement is not a basis to exclude Dr. Vander Veen's testimony.

With respect to Dr. Vander Veen's reliance on submission counting, T-Mobile does not dispute that this is a published theory, nor does it dispute that others in the industry (including intervener Ericsson) have used it to value patents. Both of these factors indicate the soundness of the methodology. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 593-95 (1993) (noting "general acceptance" and "publication" as indicia of admissibility).

T-Mobile claims without support that "if Huawei had asserted all of the patents-in-suit in a single case, rather than in four separate cases, then Dr. Vander Veen's royalty rate for every patent-in-suit would be different than it is now." [Reply at 4.] Dr. Vander Veen never said this. While it is true that the portfolio value determined using submission counting could change if the portfolio being analyzed changes, the individual patent values in Dr. Vander Veen's analysis are reached using a modified *Georgia Pacific* analysis. T-Mobile argues that because Dr. Vander Veen set a "floor rate" his individual analysis could not vary from the portfolio value, but this is incorrect – he determined an average value, not a floor. [*See* Dkt. 260, Ex. A, ¶ 176 ("My second methodology initially determines the average LTE SEP royalty rate, and then adjusts this

rate for the specifics of the Patents-in-Suit").] His analysis of the merits of the asserted patents determined that they fall at or above that average, but less meritorious patents could have fallen below. [Dkt. 284, Ex. C at 16:17-217:5.] T-Mobile cites to cases that relate to the so-called "25% rule of thumb" (Reply at 5, citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011)), but Dr. Vander Veen never used such a rule. As noted, he relies on submission counting, which is an established methodology.

For these reasons, T-Mobile's motion to exclude the damages testimony of Dr. Vander Veen should be denied.

Dated: August 17, 2017

Respectfully submitted,

By: */s/ Jonathan J. Lamberson*
Ruffin Cordell
Texas Bar No. 04820550
cordell@fr.com
Richard A. Sterba
DC Bar No. 461417
sterba@fr.com
**FISH & RICHARDSON P.C.**
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Carl E. Bruce
Texas Bar No. 24036278
bruce@fr.com
David B. Conrad
Texas Bar No. 24049042
conrad@fr.com
Jane Du
Texas Bar No. 24076355
du@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201

4

Telephone: (214) 747-5070
Facsimile: (214) 747-2091

David Barkan
California Bar No. 160825
barkan@fr.com
Jonathan J. Lamberson
California Bar No. 239107
lamberson@fr.com
**FISH & RICHARDSON P.C**.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Kevin Su
Massachusetts Bar No. 663726
su@fr.com
**FISH & RICHARDSON P.C.**
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

**COUNSEL FOR PLAINTIFF HUAWEI TECHNOLOGIES CO. LTD.**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on August 17, 2017 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Jonathan J. Lamberson*
Jonathan J. Lamberson