**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD, § <br> § <br> v. § <br> § <br> T-MOBILE US, INC., T-MOBILE U.S.A., § <br> INC., § <br> § | Case No. 2:16-CV-00052-JRG-RSP <br> Case No. 2:16-CV-00055-JRG-RSP <br> Case No. 2:16-CV-00056-JRG-RSP <br> Case No. 2:16-CV-00057-JRG-RSP |

**REPORT AND RECOMMENDATION**

Huawei Technologies Co. LTD ("Huawei") moves for summary judgment on the affirmative defenses and counterclaims filed by T-Mobile US, Inc., and T-Mobile U.S.A. Inc. (collectively, "T-Mobile") relating to Huawei's commitments to the European Telecommunications Standards Institute ("ETSI"). Huawei's motions should be denied.

**BACKGROUND**

On January 15, 2016, Huawei filed four lawsuits against T-Mobile, alleging infringement of thirteen patents.[1] T-Mobile answered with affirmative defenses and counterclaims based on a number of different legal theories. While the legal theories vary, T-Mobile's central complaint is that Huawei did not honor its commitments to ETSI because Huawei (1) failed to comply with the obligation to reasonably and timely disclose patents (referred to in the ETSI Policy as "IPR," or "intellectual property right") that might be essential to the Long-Term Evolution (LTE) standard, and (2) failed to offer T-Mobile licenses to the patents-in-suit on fair, reasonable, and nondiscriminatory (FRAND) terms. *See* Ans. at 12-50, Dkt. 106.

---

[1] *See* Case No. 2:16-CV-00052, Dkt. No. 1 (U.S. Patent Nos. 8,069,365, 8,719,617, 8,867, 339, and 9,235,462); Case No. 2:16-CV-00055, Dkt. No. 1 (U.S. Patent Nos. 8,531,971, 8,798,575, 8,325,675, 8,908,627); Case No. 2:16-CV-00056, Dkt. No. 1 (U.S. Patent Nos. 8,537,779, 8,031,677, 8,638,750); Case No. 2:16-CV-00057, Dkt. No. 1 (U.S. Patent Nos. 9,060,268, 8,625,527).

1

The parties agree that Huawei is a member of ETSI and that Huawei is subject to the ETSI IPR Policy. *See* Huawei Mot. at 3, Dkt. 257; T-Mobile Resp. Br. at 12, Dkt. 282. The dispute relates to (1) whether two clauses in the IPR Policy entitle Huawei to judgment as a matter of law, and (2) whether T-Mobile has a remedy for Huawei's alleged breach of the Policy. The first disputed clause defines Huawei's IPR disclosure requirement:

> **4.1** Subject to Clause 4.2 below, each MEMBER shall use its reasonable endeavours, in particular during the development of a STANDARD or TECHNICAL SPECIFICATION where it participates, to inform ETSI of ESSENTIAL IPRs in a timely fashion. In particular, a MEMBER submitting a technical proposal for a STANDARD or TECHNICAL SPECIFICATION shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted.

ETSI IPR Policy (April 8, 2009) at 1, Dkt. 282-1. The second relates to Huawei's FRAND obligation:

> **6.1** When an ESSENTIAL IPR relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory terms and conditions under such IPR . . . .

*Id.* at 1-2.

Huawei contends that T-Mobile's affirmative defenses and counterclaims rely on an incorrect interpretation of these two clauses, and that, as a result, Huawei is entitled to summary judgment. Huawei also argues that even if T-Mobile's interpretation is correct, summary judgment should be granted because T-Mobile does not have a remedy for any alleged breach of an ETSI obligation.

## DISCUSSION

Summary judgment must be granted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must consider evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Thorson v. Epps*, 701 F.3d 444, 445 (5th Cir. 2012). The moving party must identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a party has made that showing, the non-moving party bears the burden of establishing otherwise. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 323). The non-moving party cannot "rest upon mere allegations or denials" in the pleadings, but "must set forth specific facts showing there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 248. Thus, summary judgment "is appropriate if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 322).

### A. ETSI IPR Policy

The parties agree that French law governs the ETSI IPR Policy, and that contract interpretation under French law must be decided by the Court. The parties have submitted testimony from French law experts regarding the meaning of the two disputed clauses. Much of Huawei's motion, however, relies on what Huawei believes to be T-Mobile's incorrect interpretation of the disclosure requirement and the FRAND commitment in the ETSI IPR Policy.

T-Mobile argues, on the other hand, that Huawei's assumption regarding T-Mobile's position is incorrect. While the disagreement is not well defined, the Court will resolve the apparent dispute concerning the meaning of the two clauses.

1. IPR Disclosure Requirement

Clause 4.1 of the ETSI IPR Policy is clear and unambiguous. The clause requires a member such as Huawei to "use its reasonable endeavours . . . during the development of a standard or technical specification where it participates, to inform ETSI of essential IPRs in a timely fashion." ETSI IPR Policy at 1, Dkt. 282-1. The clause also requires a member to "draw the attention of ETSI to any of that member's IPR which might be essential if that proposal is adopted," on "a bona fide basis." *Id.* What the clause requires is clear: reasonable endeavours to timely disclose IPRs during the development of a standard, and, if a member submits a technical proposal, disclosure on a "bona fide basis" of any IPR that "might be essential" to that proposal if the proposal is adopted. *See Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1086 (W.D. Wis. 2012).

The clause is not only unambiguous, but it appears consistent with the testimony of both parties' French law experts and the extrinsic evidence. There are at most two meaningful disagreements about the scope of the requirement. First, Huawei argues that "IPR owners are required to make good faith efforts to disclose essential IPR *whenever they discover* that the IPR is essential." Huawei Mot. at 10, Dkt. 257. This argument is inconsistent with the text of the clause. A member such as Huawei must use "reasonable endeavours" to disclose IPR "during the development of a standard," and assuming Huawei submitted a technical proposal for the LTE standard, Huawei was obligated to "draw the attention of ETSI to . . . IPR which might be essential if that proposal is adopted." *See* ETSI IPR Policy at 1, Dkt. 282-1. Huawei was not entitled to wait

until it reached the conclusion that its IPR was in fact essential to an adopted standard before disclosing the IPR to ETSI.

Second, T-Mobile argues or at least insinuates that the window for disclosing IPR is closed on the day the standard is adopted (or the technical specification is published), and if IPR is not disclosed by that day, the disclosure obligation has been violated. *See, e.g.*, T-Mobile Resp. Br. at 12, Dkt. 282. This, too, is not necessarily true. As a court in Wisconsin emphasized, "[b]y using the terms 'might' and 'if,' the policy clearly requires members to *make efforts* to disclose intellectual property rights before a standard is adopted." *Apple*, 886 F. Supp. 2d at 1086 (emphasis added). This does not mean there is a bright-line rule requiring a member to disclose IPR that might be essential before a standard is adopted. There may be a circumstance in which, despite a member's reasonable endeavours, IPR that might have been essential to a proposed standard was not disclosed before the standard was adopted. The ETSI Guide therefore emphasizes that a member's duty to use "reasonable endeavours" to disclose IPR that might be essential continues even after the standard is adopted. *See, e.g.*, ESTI Guide on IPRs (November 27, 2008) § 4.6.3.4, Dkt. 257-5.

The Court cannot conclude that, as a matter of law, Huawei complied with clause 4.1. T-Mobile has come forward with evidence that Huawei did not disclose the patents-in-suit to ETSI until after technical specifications describing the standard were published, despite the Huawei inventors' participation in the 3GPP meetings. *See* T-Mobile Resp. Br. at 9-10, Dkt. 282. A reasonable juror could conclude from this and other evidence that Huawei did not comply with the ETSI Policy.

2. FRAND Requirement

The dispute concerning the FRAND requirement, or clause 6.1, relates to whether a portolio-wide license can satisfy a FRAND obligation. Huawei contends that clause 6.1 does not preclude a portfolio-wide license. *See* Huawei Mot. at 16-19, Dkt. 257. T-Mobile argues, however, that regardless of whether a portfolio-wide license can possibly satisfy a member's FRAND commitment, Huawei's portfolio-wide offer did not satisfy Huawei's FRAND commitment in this case. *See* T-Mobile Resp. Br. at 26-27, Dkt. 282. Whether Huawei's conduct was consistent with its FRAND commitment is a highly factual inquiry, and there are numerous disputes of material fact, including, for example, whether Huawei's lawsuits were retaliatory and discriminatory and whether bundling more than 800 patents in the offer was consistent with Huawei's FRAND commitment. The Court is not concluding that clause 6.1 categorically forbids a portfolio-wide license offer. But it does not follow that summary judgment must be granted.

Huawei argues that clause 6.1 does not dictate how IPR owners negotiate licenses with IPR users, but rather only relates to an IPR owner's commitment to ETSI. Yet Huawei acknowledges that it has an obligation to offer licenses on FRAND terms. *See* Huawei Mot. at 28 (IPR owner must "make a fair offer," "not discriminate between different licensees," and "engage in a good faith negotiation regarding obtaining a license."). Whether Huawei honored that obligation is a question for the jury, regardless of whether the obligation arises from clause 6.1 or elsewhere.

### B.  T-Mobile's Right to Enforce ETSI Obligations

Even if there is a dispute of fact concerning whether Huawei complied with the ETSI IPR Policy, Huawei argues that T-Mobile cannot enforce ETSI obligations. Huawei Mot. at 26-28, Dkt. 257. The Court disagrees. First, an ETSI "member" includes that member's "affiliates," including entities "owned or controlled" by a member. *See* ETSI IPR Policy §§ 15.1, 15.9, Dkt. 282-1.

Deutsche Telekom AG is a controlling shareholder of T-Mobile, *see* Dkt. 282 at 4, and thus T-Mobile is a member of ETSI, according to the terms of the IPR Policy. As several courts have concluded, an ETSI member has a cause of action to enforce ETSI obligations. *See, e.g.*, *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-CV-178-BBC, 2011 WL 7324582, at *8 (W.D. Wis. June 7, 2011) (members of voluntary association may enforce terms under Wisconsin contract law); *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2012 WL 1672493, at *11-*14 (N.D. Cal. May 14, 2012) (applying French law to ETSI Policy to reach same conclusion).

Second, even if T-Mobile is not a member of ETSI, the Court credits the report of T-Mobile's expert, who explains that under French law, non-members may enforce ETSI obligations because ETSI obligations exist for the benefit of industry participants. *See* Nicolas Molfessis Rep. ¶¶ 39-49. If this were not the case, there would be little if any remedy for a member's noncompliance. *See id.* Huawei cannot credibly argue that a member or third-party beneficiary could seek appropriate redress through ETSI alone. French law's recognition of third-party beneficiary status in this context is not unusual. Several courts applying American state law have held that third party beneficiaries can enforce ETSI obligations. *See, e.g.*, *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-CV-178-BBC, 2011 WL 7324582, at *10-*11 (W.D. Wis. June 7, 2011) (applying Wisconsin law). Accordingly, the Court concludes that under French law (or any applicable American state law), T-Mobile is either an ETSI member who may bring action arising from ETSI obligations or a third-party beneficiary with a similar right.

### C. T-Mobile's Remedy

Huawei argues that T-Mobile is not entitled to a remedy because ETSI's IPR Policy provides the only means by which a member may seek relief. Huawei Mot. at 27, Dkt. 257. The Court disagrees. A jury's finding that Huawei breached a duty to a standard setting organization

can support a finding of implied waiver of any right to assert patent infringement claims, or it may support a finding of equitable estoppel, among other potential remedies. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011). In addition, T-Mobile may be entitled to the cost of litigation as damages if T-Mobile shows those damages were caused by Huawei's breach of ETSI commitments. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1049 (9th Cir. 2015).

### D.  Mootness

Finally, Huawei argues that T-Mobile's affirmative defenses and counterclaims are moot because Huawei recently served its expert report on damages, which qualifies as a FRAND offer, according to Huawei. The argument is not persuasive. Regardless of whether Huawei's opening expert report constitutes a FRAND license offer, T-Mobile disputes whether the rates in Huawei's opening report comply with FRAND obligations, and even if the rates do comply, T-Mobile has alleged damages prior to receiving Huawei's expert report. Whether T-Mobile is entitled to such damages is a question for the jury.

## CONCLUSION

Having found a genuine issue of material fact concerning T-Mobile's affirmative defenses and counterclaims, Huawei is not entitled to summary judgment. Huawei's supplemental expert report has been considered but does not change the Court's conclusion.

Accordingly,

It is **RECOMMENDED**:[2]

Huawei's motions for summary judgment[3] should be denied.

**SIGNED this 29th day of August, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[2] A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

[3]     Dkt. 257 in Case No. 2:16-cv-00052;
    Dkt. 246 in Case No. 2:16-cv-00055;
    Dkt. 248 in Case No. 2:16-cv-00056;
    Dkt. 242 in Case No. 2:16-cv-00057.