**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **HUAWEI TECHNOLOGIES CO. LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**T-MOBILE US, INC. and<br>T-MOBILE USA, INC.,**<br><br>Defendants,<br><br>**NOKIA SOLUTIONS AND NETWORKS US LLC, NOKIA SOLUTIONS AND NETWORKS OY, TELEFONAKTIEBOLAGET LM ERICSSON, and ERICSSON INC.,**<br><br>Intervenors. | No. 2:16-cv-00052-JRG-RSP<br>No. 2:16-cv-00055-JRG-RSP<br>No. 2:16-cv-00056-JRG-RSP<br>No. 2:16-cv-00057-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS AND INTERVENORS' MOTION TO COMPEL PRODUCTION
OF CLAWED-BACK DOCUMENTS**

**Introduction**

Pursuant to Rule 26(b)(5)(B), Fed. R. Civ. P. and the Court's September 20, 2017 Order (D.I. 412[1]), Defendants and Intervenors respectfully request that the Court compel production of eighteen documents that Huawei produced in this litigation and recently "clawed back." These documents directly relate to—and support—T-Mobile's counterclaims based on Huawei's failure to timely disclose its IPR to ETSI. Notably, Huawei only moved to claw the documents back after T-Mobile identified them as highly relevant and demanded that Huawei confirm it had produced all similar documents.

The documents at issue are unquestionably relevant, and their production would not be unduly burdensome, as Huawei has acknowledged by producing the documents previously. Huawei's only argument for not producing the clawed-back documents, set forth in its September 14, 2017 letter motion, is that it should be allowed to "maintain" an alleged privilege over them. In order to succeed on its motion and avoid re-producing the documents, Huawei has two burdens: Huawei must prove *both* (1) that the documents are privileged, and, even if so, (2) that Huawei has not waived any privilege by virtue of its production. Huawei has not come close to meeting its burden on either score. Indeed, Huawei has made no effort to address waiver at all, let alone provide evidence sufficient to carry its burden; and, as discussed below, Huawei's production of the documents was clearly *not* inadvertent, as required for Huawei to avoid waiver. Moreover, even if Huawei had not waived any applicable privilege, Huawei's privilege log does not establish privilege—the log does not even identify any lawyers or provide any evidence that any lawyer was involved in the communications in question.

---

[1] Docket citations are to Case No. 2:16-cv-00052-JRG-RSP unless otherwise indicated.

Throughout this case, Huawei has attempted to insulate from discovery evidence that it violated its obligations to timely disclose its IPRs. The documents it produced and then clawed back are such evidence, indisputably relevant to T-Mobile's claims and defenses. Huawei waived any privilege regarding those documents, and has not even established that the documents were privileged in the first place. T-Mobile respectfully requests that the documents be produced.

**Background**

On June 16, 2016, and August 11–22, 2017, Huawei produced a series of spreadsheets over which it now claims privilege. T-Mobile provided the earliest-produced spreadsheet to the Court in support of T-Mobile's opposition to Huawei's motion for summary judgment (filed August 7, 2017), and T-Mobile relied on that spreadsheet to show that "Huawei methodically tracked information on 'lurking patents' that directly drew a connection between the patent and/or application and the status of corresponding proposals at 3GPP." T-Mobile Opp. to MSJ (D.I. 282) at 8. On August 15, 2017, Huawei filed its sur-reply, and on August 22, the Court heard argument on the motion. At no time did Huawei dispute T-Mobile's factual allegations regarding the spreadsheet, object to T-Mobile's reliance on it, or assert privilege over it.

After receiving Huawei's additional document productions on August 11–22, 2017, T-Mobile discovered that the productions contained even more evidence supporting T-Mobile's contention that Huawei knowingly delayed—for years—disclosure of its IPR to ETSI. Accordingly, on September 7, 2017, T-Mobile wrote to Huawei to demand an explanation "why these critically relevant documents were not produced during discovery," and asked Huawei to confirm that it had or would produce all similar documents. T-Mobile 9/7/17 Ltr. (Ex. 1).[2]

---

[2] T-Mobile's September 7 letter also asked Huawei to fix errors in its production that made thousands of Huawei's production documents unreviewable (because they are encrypted or have corrupted image files), including documents that by their filenames appear to bear directly on this

Three days later, Huawei sent an email clawing back the documents identified in T-Mobile's September 7 letter, as well as over a dozen similar documents, on unspecified grounds of privilege. Huawei 9/10/17 Claw-back Email (Ex. 2). When T-Mobile requested that the certified translators it had engaged be permitted to continue their work—which was already well underway—so that the Court would have certified translations to aid its review, Huawei refused, stating that it did "not believe that the Court needs translations of the documents to evaluate the privilege claim," and asked repeatedly for confirmation that T-Mobile had ceased all translation activity. Huawei 9/11/2017 and 9/13/2017 emails (Exs. 3 & 4). On September 13, 2017, Huawei provided T-Mobile with a privilege log for the clawed-back documents, and the next day provided uncertified, machine translations of the documents to the Court for *in camera* review, along with a letter motion "ask[ing] that the Court maintain Huawei's privilege over the enclosed documents." Huawei 9/14/17 Ltr. (Ex. 5) at 2. On September 18, 2017, T-Mobile filed a response to Huawei's letter motion explaining that Huawei had not met its burden of showing that the documents are privileged and that there had been no waiver, and requesting that the documents be produced. D.I. 401. Huawei filed a motion to strike T-Mobile's response from the record. Dkt. 410. In its September 20, 2017 Order, the Court found that striking T-Mobile's response was unnecessary, but stated that "the proper avenue to test whether privilege has been properly asserted is with a motion to compel withheld documents." D.I. 412 at 3. Pursuant to that Order, T-Mobile respectfully submits the instant motion for the Court's consideration.

---

critical issue of essentiality. Huawei has not fixed these errors or even responded to the substance of T-Mobile's concern since then, despite multiple follow-up requests by T-Mobile. If Huawei does not fix these production errors then T-Mobile may need to seek relief from the Court.

**Argument**

To avoid re-producing the clawed-back documents, Huawei must carry two burdens: Huawei must prove (1) that the documents are *privileged*, and (2) that it did not *waive* the privilege. *See United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) ("The burden of establishing privilege rests on the party who invokes it."); *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, Case No. 4:15-CV-766, 2017 WL 3521727, at *2 (E.D. Tex. Aug. 16, 2017) (the party asserting the privilege "bears the burden of demonstrating applicability of the privilege, including that waiver did not occur."). Huawei cannot carry either burden.

**I.    Huawei's Disclosure of the Clawed-Back Documents Waived Any Privilege**

Even if the documents Huawei clawed back were privileged (and, as discussed below, they were not), Huawei waived any applicable privilege by producing the documents in this litigation. Under Federal Rule of Evidence 502, disclosure of a privileged communication results in waiver *unless*: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26 (b)(5)(B)." Fed. R. Evid. 502(b).

Huawei bears the burden to prove *all three* of these conditions. But, Huawei has not provided evidence to prove any one of them. Indeed, Huawei makes no effort to address its waiver at all.[3]

***No showing of inadvertence.*** Disclosure of a privileged document may be considered "inadvertent" where, for example, the document is reviewed and identified as privileged, but is

---

[3] In contrast, when Huawei challenged T-Mobile's claw-back of certain privileged documents, T-Mobile provided a detailed attorney declaration providing evidence to justify T-Mobile's claw-back, as well as the declaration of a T-Mobile employee. *See* D.I. 327.

4

accidentally placed in a group of documents for production. *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 140 (E.D. Tex. 2003) (finding disclosure was inadvertent where "two documents, though set aside to be marked as privileged, inadvertently ended up in one of the boxes of documents produced to Plaintiffs"). Critically, "the *disclosure* itself, not the *waiver* of the privilege, must have been inadvertent." *First Am. CoreLogic, Inc. v. Fiserv, Inc.*, Case No. 2:10-CV-132-TJW, 2010 WL 4975566, at *4 (E.D. Tex. Dec. 2, 2010) (emphasis in original).

Here, the timing of Huawei's claw-back—after T-Mobile demanded that Huawei confirm it has produced all similar types of documents and after T-Mobile used one of the documents in summary judgment briefing—demonstrates anything but inadvertence. Indeed, that Huawei produced several of the documents *after* T-Mobile filed its summary judgment opposition undercuts any credible argument that the documents were inadvertently produced, even if Huawei did not "identif[y]" or "recognize" the documents as privileged until after they were produced. Huawei 9/14/17 Ltr. (Ex. 5) at 2. *See, e.g.*, *Adaptix, Inc. v. Alcatel-Lucent USA, Inc.*, Case No. 6:12-cv-22, 2015 WL 12781215, at *1–2 (E.D. Tex. June 1, 2015) (finding privilege waived where, before documents were clawed back, defendants relied on the documents in the litigation with no objection from the plaintiff); *Francisco v. Verizon S., Inc.*, 756 F. Supp. 2d 705, 719 (E.D. Va. 2010) (disclosure was not inadvertent where producing party "knew that it was producing the document, but at that time, it had no reason to believe that the notes were privileged," and "only after a more extensive, second investigation . . . realize[d] that the subject document might be privileged"). Because Huawei does not come close to meeting its burden to prove inadvertent disclosure, it cannot maintain privilege over the documents.

***No showing of reasonable steps to prevent disclosure or promptly to rectify the alleged error.*** In addition to its burden to prove inadvertent disclosure, to avoid waiver, Huawei must

show that it took reasonable steps (1) to prevent disclosure, and (2) promptly to rectify the alleged error. Fed. R. Evid. 502(b). As to the first requirement, Huawei fails to offer any evidence of its efforts to prevent disclosure. And as to the second, given the circumstances, Huawei's delay in its assertion of privilege demonstrates that Huawei failed to act promptly to rectify the alleged error. As discussed above, Huawei produced one of the spreadsheets (HW_TMO_00059845) over a year ago, and T-Mobile filed that spreadsheet as an exhibit in support of its opposition to Huawei's summary judgment motion. Yet Huawei did *nothing*. Further, according to Huawei's privilege log, all of the other clawed-back spreadsheets are of the same type as the one produced in June 2016. Thus, Huawei's claw-back letter—sent more than a year after a representative spreadsheet was produced, over a month after the document was on file with the Court, and weeks after the remaining documents were produced—cannot be deemed prompt or reasonable. *See, e.g., Adaptix, Inc. v. Alcatel-Lucent USA, Inc.*, Case No. 6:12-cv-22, 2015 WL 12781215, at *1 (E.D. Tex. June 1, 2015) (party waives privilege by failing to timely claw back inadvertent disclosure).

Because it is Huawei's burden to show (1) inadvertent disclosure, (2) reasonable steps to prevent disclosure, and (3) prompt, reasonable steps to rectify the error, and Huawei has not provided evidence to carry its burden on any one of the three, Huawei has waived privilege.

**II.     Huawei Has Not Substantiated Its Claims of Privilege**

Given Huawei's waiver, the Court need not decide whether the clawed-back documents are privileged. In any event, Huawei's request to "maintain" privilege also fails because Huawei has not shown that the documents were ever privileged in the first place. Just as on the waiver issue, Huawei bears the burden to prove that the privilege attached. *Robinson*, 121 F.3d at 974.

But the privilege log Huawei has submitted does not permit a conclusion that the clawed-back documents are privileged attorney-client communications.[4]

To establish attorney-client privilege, Huawei has the burden of proving that each document was: (1) a confidential communication; (2) to a lawyer; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding. *Tech Pharmacy Servs.*, 2017 WL 3521727, at *2; *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 n.7 (5th Cir. 2001) ("[T]he privilege claimant's burden extends to proof of preliminary facts showing that the matter is eligible for protection."). Huawei has not shown that any one of the requirements is met.

***No Privilege Attaches to Chinese Communications.*** At the outset, as this Court has recognized, whether communications with foreign lawyers or patent agents are protected by attorney-client privilege turns on whether the law of the foreign jurisdiction would treat the communications as privileged. *See Lincoln Elec. Co. v. Esab Grp., Inc.*, Case No. 2:15-CV-1404-JRG-RSP, 2016 WL 6804861, at *1 (E.D. Tex. Nov. 17, 2016) (Payne, M.J.) (applying Swedish law to determine whether the privilege extended to a Swedish patent attorney); *see also 2M Asset Management, LLC v. Netmass, Inc.*, Case No. 2:06-CV-215, 2007 WL 666987, at *2–3 (E.D. Tex. Feb. 28, 2007) (applying German law to determine whether communications with a German patent agent were privileged). Accordingly, Chinese law governs whether Huawei's China-based communications with its Chinese lawyers and patent agents are protected.[5] As with all aspects of

---

[4] Huawei has not asserted that the clawed-back documents are protected as work product, and all of the documents pre-date the litigation between the parties by years.

[5] District courts recognize two approaches to the choice of law analysis: the "touch base" and the "comity" approaches. *See 2M*, 2007 WL 666987, at *2–3. Because Huawei is a Chinese company, the communications are in Chinese, and there is no evidence that any participant was not China-based, Chinese law applies using either approach.

the privilege inquiry, Huawei "bears the burden of demonstrating that [Chinese] law actually bars the production" of the clawed-back documents. *Wultz v. Bank of China Ltd.*, 979 F. Supp. 2d 479, 486 (S.D.N.Y. 2013).

Yet Huawei has not mentioned Chinese law, let alone established that Chinese law protects the clawed back documents, and for good reason: Chinese law does not recognize attorney-client privilege. *Id.* at 493 ("Because Chinese law does not recognize the attorney-client privilege or the work-product doctrine, BOC must produce those items listed on its privilege log which are governed by Chinese privilege law."); *see also* Xu Xi, *A Comparative Study of Lawyers' Ethics in the US and PRC: Attorney-Client Privilege and Duty of Confidentiality*, 1 Tsinghua China L. Rev. 49, 54 (2009) ("PRC lawyers and their clients do not enjoy attorney-client privilege with respect to their communications under the 2008 Lawyers' Law."). Thus, as a matter of law, no privilege attaches to these (and other) communications.

***No showing that any lawyer was involved.*** Even if a privilege could attach to any of these communications in China, Huawei's privilege log fails to provide a basis for a claim of privilege. Most glaringly, Huawei has failed to establish privilege because not one entry in the log identifies a lawyer as a sender or recipient, nor does the log identify any lawyer as an author of the spreadsheets being communicated. *See Tivo, Inc. v. AT&T Inc.*, Case No. 2:09-CV-259 (DF), 2011 WL 13089004, at *2 (E.D. Tex. Dec. 27, 2011) (party failed to establish privilege because it failed to identify any author or recipient that was an attorney, or otherwise establish the source of the allegedly privileged information). Nor has Huawei submitted any declaration or other support for its claim that the documents are protected attorney-client communications. *See, e.g.*, *Smith v. Texaco, Inc.*, 186 F.R.D. 354, 356 (E.D. Tex. 1999) (no privilege where "[n]ot one attorney of record has offered evidence of his involvement in establishing an attorney-client privilege").

8

Indeed, even after T-Mobile requested that Huawei identify the lawyers involved (during a meet and confer after receiving Huawei's privilege log), Huawei failed to identify a single lawyer. Thus, the lack of any evidence that any lawyer was involved precludes Huawei from establishing privilege.

Moreover, Huawei's reliance on the alleged involvement of its "Patent Review Board" is insufficient: Huawei cannot prove its claim of privilege by asserting *generally* that its Patent Review Board includes "patent attorneys and agents." Huawei 9/14/17 Ltr (Ex. 5) at 1. *See Thurmond v. Compaq Comput. Corp.*, 198 F.R.D. 475, 483 (E.D. Tex. 2000) (holding conclusory statements inadequate to establish privilege). Huawei's failure to identify a single lawyer involved in the communications, coupled with the fact that the Patent Review Board is comprised of "members of Huawei's IPR Department," *which includes and is led by non-lawyers*, is fatal to Huawei's privilege claim. Huawei Opp. to Mot. to Compel (D.I. 224) at 4. For example, Huawei's 30(b)(6) witness, Wang Xin, is both the director of Huawei's telecommunications patent department and reports directly to the director of the IPR department, but testified repeatedly that he is not an attorney. *See* Xin Dep. Tr. (Ex. 7) at 9:15–17; *id.* at 20:21–23; *id.* at 39:22; *id.* at 40:16. Likewise, at least one former President of the Patent Review Board does not appear to have any formal legal education. *See* Huawei's 2016 Annual Report (Ex. 6) [PX-5129] at 112 (describing Mr. Song Liuping as having "completed his postdoctoral research at Beijing Institute of Technology"). Thus, simply stating that the Patent Review Board has some undefined involvement with these documents cannot substitute for an actual identification of a lawyer who actually participated in the communication.

***No showing that the documents were (1) confidential communications (2) for the purpose of securing legal advice.*** Finally, in addition to Huawei's failure to prove that any lawyer

9

was involved in the communications in question, Huawei's privilege log does not establish that the documents Huawei has clawed back were kept confidential, or that the communications were for the primary purpose of securing legal advice or assistance. For example, the log provides almost no information about the senders and recipients on the communications, so as to determine whether the communications were confidential. Not one of the entries provides email addresses for any of the senders or recipients, which would show whether the communications involved outside parties. Moreover, with only two exceptions, the entries do not provide even the *names* of senders or recipients—instead, they list what appear to be network usernames. The privilege descriptions also fail to show that the communications were for the primary purpose of seeking legal advice, as opposed to routine business decisions about Huawei's patent portfolio. There is simply no basis to conclude that the communications were confidential or for the purpose of obtaining legal advice.

## Conclusion

T-Mobile respectfully requests that Huawei be ordered to produce the clawed-back documents any similar documents over which it previously claimed privilege.

| | |
|---|---|
| Dated: September 20, 2017 | By: */s/ Mark N. Reiter* |

        Josh A. Krevitt (New York Bar No. 2568228)
        **GIBSON, DUNN & CRUTCHER LLP**
        200 Park Avenue, 47th Floor
        New York, New York 10166
        Tel: (212) 351-4000
        Fax:  (212) 351-4035

        Mark N. Reiter (Texas Bar No. 16759900)
        **GIBSON, DUNN & CRUTCHER LLP**
        2100 McKinney Avenue, Suite 1100
        Dallas, Texas 75201
        Tel: (214) 698-3100
        Fax: (214) 571-2900

        Ernest Y. Hsin (California Bar No. 201668)
        **GIBSON, DUNN & CRUTCHER LLP**
        555 Mission Street
        San Francisco, CA 94105-0921
        Tel: (415) 393-8224
        Fax: (415) 374-8436

        Stuart M. Rosenberg (California Bar No. 239926)
        **GIBSON, DUNN & CRUTCHER LLP**
        1881 Page Mill Road
        Palo Alto, CA 94304-1211
        Tel: (650) 849-5389
        Fax: (650) 849-5089

        Mark D. Selwyn (California Bar No. 244180)
        Kathryn D. Zalewski (California Bar No. 263119)
        **WILMER CUTLER PICKERING**
         **HALE AND DORR LLP**
        950 Page Mill Road
        Palo Alto, California 94304
        (650) 858-6000

Joseph J. Mueller
(Massachusetts Bar No. 647567)
Cynthia Vreeland
(Texas Bar No. 20625150
Massachusetts Bar No. 635143)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
(617) 526-6000

Michael E. Jones (Texas Bar No. 10929400)
mikejones@potterminton.com
E. Glenn Thames, Jr. (Texas Bar No. 00785097)
glennthames@potterminton.com
**POTTER MINTON, PC**
110 North College Ave., Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846

*Counsel for Defendants T-Mobile US,
Inc. and T-Mobile USA, Inc.*


/s/ *John D. Haynes*
John D. Haynes (GA Bar No. 340599)
Patrick J. Flinn (GA Bar No. 264540)
Michael C. Deane (GA Bar No. 498195)
**ALSTON & BIRD LLP**
1201 W. Peachtree St.
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: John.Haynes@alston.com
Email: Patrick.Flinn@alston.com
Email: Michael.Deane@alston.com

Michael J. Newton (TX Bar No. 24003844)
**ALSTON & BIRD LLP**
2800 N. Harwood St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
Email: Mike.Newton@alston.com
Email: Derek.Neilson@alston.com

M. Scott Stevens (NC Bar No. 37828)
Ross R. Barton (NC Bar No. 37179)
**ALSTON & BIRD LLP**
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
Email: Scott.Stevens@alston.com
Email: Ross.Barton@alston.com

Deron R. Dacus (Texas State Bar No. 790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite
430 Tyler, TX 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543

*Counsel for Intervenors Nokia Solutions
and Networks US LLC and Nokia Solutions
and Networks Oy*

        /s/ *Phillip B. Philbin*
Phillip B. Philbin (State Bar No. 15909020)
LEAD ATTORNEY
Jamie H. McDole (State Bar No. 24082049)
Michael D. Karson (State Bar No. 24090198)
Tiffany M. Cooke (State Bar No. 24087340)
**HAYNES AND BOONE, LLP**
2323 Victory Avenue
Suite 700
Dallas, Texas 75219
Tel.: (214) 651-5000
Fax: (214) 651-5940
Email: phillip.philbin@haynesboone.com
jamie.mcdole@haynesboone.com
michael.karson@haynesboone.com
tiffany.cooke@haynesboone.com

Jason T. Lao (California State Bar No. 288161)
**HAYNES AND BOONE, LLP**
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Tel.: (949) 202-3051
Fax: (949) 202-3151

*Counsel for Intervenors
Telefonaktiebolaget LM Ericsson and
Ericsson Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on September 20, 2017, by electronic mail upon all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

        */s/ Mark N. Reiter*
        Mark N. Reiter

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that Exhibits 1-7 attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this case.

                                            */s/ Mark N. Reiter*
                                              Mark N. Reiter

**CERTIFICATE OF CONFERENCE**

On September 19, 2017, counsel for T-Mobile, including Mark Reiter, Stuart Rosenberg, Mike Jones, and Glenn Thames, conferred with counsel for Huawei including David Barkan and Jonathan Lamberson. Counsel discussed the fact that Huawei had filed a letter asking the Court to hold that the documents clawed back by Huawei on September 10, 2017 were properly clawed back as privileged, and the fact that T-Mobile disagrees with Huawei for the reasons set forth in T-Mobile's response to Huawei's letter. Huawei did not withdraw its claim of privilege, and thus T-Mobile submits that the parties have reached an impasse.

                                            */s/ Mark N. Reiter*
                                              Mark N. Reiter